IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANWAR T. JOHNSON | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-4758 |
| | : | |
| JON A. FISHER, et al. | : | |

### MEMORANDUM

**Juan R. Sánchez, J.**                                                                                       September 20, 2016

  Pro se Petitioner Anwar T. Johnson objects to the Report and Recommendation of United States Magistrate Judge Carol Sandra Moore Wells, recommending that Johnson's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be dismissed and denied without an evidentiary hearing. Upon de novo review of the record, the Court agrees with the Magistrate Judge that Johnson's ineffective assistance of counsel claims must be either dismissed as procedurally defaulted or denied on the merits. Accordingly, Johnson's objections will be overruled, the Report and Recommendation will be approved and adopted, and Johnson's habeas petition will be dismissed and denied without an evidentiary hearing.

**BACKGROUND**

  In February 2007, Johnson was convicted of first-degree murder and related offenses in connection with the June 2004 shooting death of Aki Collins (the victim). The shooting occurred inside a car, with Johnson in the driver's seat, the victim in the rear passenger seat, and a third individual, Kareem Davis, in the front passenger seat. Johnson and the victim did not get along because Johnson believed the victim had called the police on him several years earlier. On the night of the shooting, Davis invited the victim into the car, and, while Johnson drove the group around West Philadelphia, he and the victim argued about the earlier incident. At one point, Johnson pulled the car over to point out a phone booth he believed the victim had used to call the

police on him. Johnson and the victim continued to argue after the stop. The victim told Johnson, "You can go to war, whatever you want to do. You can do whatever you want to do," and shortly thereafter stated, "I'm rapped out, I ain't got nothing more to talk about no more," or words to that effect. *Commonwealth v. Johnson*, No. CP-51-CR-1101461-2005, 2013 WL 11274696, at *6 (Pa. Ct. Com. Pl. Mar. 30, 2012) (citations omitted). *Id.* (citation omitted). Following this last statement, Johnson pulled out a gun and began shooting at the victim, firing a total of twelve shots while driving the car forward, ten of which struck the victim in the head. The car eventually crashed into a house. After the shooting, Johnson and Davis fled separately to Davis's girlfriend's house and eventually disposed of the clothes they had been wearing in a park. Two days later, Davis went to the police and provided a statement about the incident. Johnson, upon learning a warrant had been issued for his arrest, took a bus to San Diego, California, where he stayed until he was extradited back to Philadelphia following a drug arrest in California.

As Johnson acknowledges, at trial, "[t]he majority of the facts . . . were not in dispute." Pet'r's Reply 4. The defense did not dispute Johnson had shot the victim, but argued he had acted in self-defense. On the advice of his counsel, two experienced public defenders, Johnson did not testify, instead relying on other evidence to support his claim of self-defense, including Davis's testimony that he had seen a gun in the victim's lap in the back seat; the fact that a .25 caliber semi-automatic weapon had been recovered from under the front passenger seat[1]; the victim's words immediately prior to the shooting, which the defense characterized as a threat; and the fact that Johnson kept driving during the shooting, eventually crashing the car, which the defense claimed suggested he acted out of fear rather than malice.

---

[1] There was no evidence any shots had been fired from the back seat of the car.

Following a bench trial, the trial court found Johnson guilty of first-degree murder and three other charges, and in May 2007, the judge imposed a mandatory life sentence on the murder charge and concurrent prison terms on the remaining counts.[2]  Johnson appealed, challenging the sufficiency of the evidence, but the Superior Court affirmed his convictions in March 2009, and the Pennsylvania Supreme Court denied his petition for allowance of appeal in August 2009.

In September 2010, Johnson, represented by different counsel, filed a petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), alleging his trial counsel were ineffective for (1) advising him not to testify at trial based on the mistaken belief that he would be impeached with an "ancient" juvenile robbery adjudication, and (2) failing to present photographs and testimony from a defense investigator who had reenacted the incident, which Johnson maintained would have bolstered his claim of self-defense.[3]  *See* Resp'ts' Response 8. Following an evidentiary hearing at which Johnson and both of his trial attorneys testified, the PCRA court—the same judge who had presided over Johnson's trial—denied his petition.

---

[2] After sentencing, Johnson, represented by new counsel, filed a post-sentence motion, which was denied by operation of law in September 2007.  According to the Commonwealth, this motion, which is not in the record before this Court, raised ineffective assistance of counsel claims concerning trial counsel's (1) failure to introduce the victim's prior aggravated and simple assault convictions, (2) argument during closing that voluntary manslaughter was not a viable verdict, and (3) inadequate cross-examination of the Commonwealth's identification witness.  *See* Resp'ts' Response 7.  Although Johnson had new counsel for purposes of his post-sentence motion, he was again represented by the public defender office on direct appeal.

[3] Although Johnson's PCRA petition is not in the record before this Court, Johnson has provided the Court with the affidavits from his trial counsel that accompanied the petition.  According to those affidavits, the reenactment evidence counsel failed to present consisted of "photographs of the interior of the same make and model of the car in which this shooting took place, as well as testimony from our defense investigator who had re-enacted the incident, that would have showed just how easy it would have been for our client to clearly see the gun that the complainant possessed."  Aff. & Decl. of Stephen Gross, Esq. ¶ 5 (App. B to Pet'r's Reply).

Johnson appealed, arguing the PCRA court erred in denying relief because (1) the evidence at trial established trial counsel were ineffective for failing to move in limine to exclude his juvenile robbery adjudication, (2) the evidence introduced at the PCRA evidentiary hearing established there was a reasonable probability that had Johnson testified at trial and the reenactment evidence been presented, the outcome of the trial would have been different, and (3) the PCRA court improperly revisited her role as the finder of fact and applied the incorrect legal standard in passing on Johnson's credibility at the PCRA hearing.  In March 2012, the PCRA court issued an opinion addressing Johnson's assertions of error and setting forth the reasons the dismissal of his PCRA petition should be affirmed.  *See* Pa. R. App. P. 1925(a)(1) (requiring trial courts, in the event of an appeal, to file "at least a brief opinion of the reasons for the order [being appealed], or for the rulings or other errors complained of").  The PCRA court first concluded Johnson had waived his claim regarding counsel's failure to file a motion in limine by not raising it in his PCRA petition.  Construing Johnson's second claim as a challenge to counsel's failure to call him as a witness at trial, the PCRA court rejected the claim on the merits, opining that Johnson had failed to show his trial counsel's advice was unreasonable or that counsel's alleged ineffectiveness prejudiced his defense.  Specifically, the court rejected as not credible Johnson's trial counsel's PCRA hearing testimony that they had advised Johnson not to testify at trial because they believed his juvenile adjudication would be admissible against him.[4]

---

[4] The PCRA court found it "incredible" that counsel did not follow up on Johnson's juvenile record until four days before the February 2007 trial when one of his attorney's notes "made clear that she was made aware of [Johnson's] juvenile record as early as September 28, 2006." *Johnson*, 2013 WL 11274696, at *9.  The PCRA court also noted defense counsel's "affidavits mirrored each other so rotely and closely" in declining to credit their hearing testimony.  *Id.* Because the PCRA court declined to credit trial counsel's testimony regarding the reason they advised Johnson not to testify, the court did not address whether the juvenile adjudication would in fact have been inadmissible at trial.

4

The court instead found counsel's advice was "based on a strategic decision not to subject [Johnson] to rigorous cross-examination," a decision the court concluded was reasonable "in light of the number of times [Johnson] shot the victim in the head and [his] numerous consciousness-of-guilt acts," and given counsel's belief that "the evidence, as it was elicited, gave her a sufficient basis from which to argue self-defense." *Johnson*, 2013 WL 1127496, at *9-10. The PCRA court also concluded Johnson had not shown counsel's advice had prejudiced him as his testimony at the evidentiary hearing was not credible and there was thus no reasonable probability that, had he testified,[5] the outcome of the case would have been different "because no reasonable fact finder would believe petitioner's testimony when taken in context."[6] *Id.* at *10. Finally, the PCRA court rejected Johnson's assertion that the court erred in making credibility determinations at the PCRA hearing after serving as the finder of fact at Johnson's bench trial. In March 2013, the Superior Court affirmed the denial of Johnson's PCRA petition, adopting the PCRA court's opinion as its own.

---

[5] To prove prejudice in this case, Johnson would have to show, first, that had counsel not given him erroneous advice about the admissibility of his juvenile adjudication, there is a reasonable probability he would have testified, and second, that had he testified, there is a reasonable probability the result of the trial would have been different. *See United States v. Moskovits*, 844 F. Supp. 202, 206 (E.D. Pa. 1993). The PCRA court made no finding as to the first issue.

[6] The PCRA court described the reasons for its credibility finding in some detail in its Rule 1925 opinion, citing, inter alia, its disbelief of Johnson's testimony that he was angry at Davis, not the victim, on the night of the shooting; inconsistencies between Johnson's and Davis's accounts of events that night; and the lack of evidence that Johnson ever told Davis or anyone else he interacted with following the shooting that he had seen the victim with a gun. *See Johnson*, 2013 WL 1127496, at *10. The PCRA court "found it incredible that [Johnson], having just shot a man ten [t]imes in the head because he feared for his life after having heard [the victim's] words and having seen him with a gun would have failed to mention this to Davis or to Mr. Glen or Mrs. Glen [Davis's girlfriend's parents, to whose home Davis and Johnson fled after the shooting]." *Id.*

In August 2013, Johnson, proceeding pro se, filed the instant federal habeas petition, again seeking relief based on ineffective assistance of counsel.[7] Johnson alleges his trial counsel were ineffective (1) for failing to file a motion in limine to exclude his juvenile robbery adjudication, (2) for advising him not to testify based on the erroneous belief he would be impeached with his prior juvenile adjudication, (3) for failing to introduce photographs supportive of Johnson's claim of self-defense, (4) because one of his trial attorneys was impaired by over-the-counter cold medication during trial, and (5) for making multiple errors that in combination denied him a fair trial. After review of Johnson's habeas petition, the Commonwealth's response, Johnson's reply, and the exhibits submitted by both parties, the Magistrate Judge issued a Report and Recommendation recommending the petition be dismissed and denied without an evidentiary hearing. The Magistrate Judge concluded Johnson's first, third, fourth, and fifth claims are procedurally defaulted and rejected his second claim on the merits. Johnson objects to the disposition of each of his claims.

**DISCUSSION**

Johnson's first and second ineffective assistance of counsel claims are closely related, as both claims concern counsel's erroneous belief about the admissibility of Johnson's prior juvenile adjudication for impeachment purposes and the impact of this error on Johnson's decision to testify in his own defense at trial.[8] Claims of ineffective assistance of counsel are

---

[7] After Johnson filed his federal habeas petition, the Pennsylvania Supreme Court denied his petition for allowance of appeal from the Superior Court's March 2013 ruling.

[8] Although Johnson asserts these claims together as a single ground for relief, the PCRA court and the Superior Court addressed the claims separately, as did the Magistrate Judge. As discussed below, whether the claims are addressed separately or together is ultimately immaterial, as both of the asserted errors are alleged to have prejudiced Johnson in the same way—by interfering with his decision whether to exercise his right to testify—and Johnson has

evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, a convicted defendant must show (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Id.* at 687. Because a defendant must satisfy both prongs of the *Strickland* test to establish an ineffective assistance of counsel claim, a court reviewing such a claim need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. Rather, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* To establish prejudice, a defendant "need not show that counsel's deficient conduct more likely than not altered the outcome of the case," but must show more than that the errors complained of "had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability in this context is "a probability sufficient to undermine confidence in the outcome." *Id.*

With respect to Johnson's second claim—that counsel were ineffective for advising him not to testify at trial—as the Magistrate Judge recognized, because the state courts adjudicated this claim on the merits, this Court may not grant federal habeas relief unless Johnson shows the state courts' adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

not established a basis for this Court to disturb the state courts' rejection of his showing on this issue.

28 U.S.C. § 2254(d).[9]  In reviewing the state courts' decisions, moreover, this Court must accord the state courts' determinations on factual issues subsidiary to the ultimate decision a presumption of correctness, which Johnson bears the burden of rebutting by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Williams v. Beard*, 637 F.3d 195, 204 n.7 (3d Cir. 2011).

Applying this deferential standard of review and focusing on the prejudice component of the *Strickland* test, the Magistrate Judge found the state courts' rejection of Johnson's claim was a reasonable application of *Strickland*.  The Magistrate Judge first concluded the PCRA court's finding that Johnson's PCRA hearing testimony was "not worthy of belief" was entitled to a presumption of correctness under § 2254(e)(1), which Johnson had failed to rebut.  In light of this adverse credibility finding, the Magistrate Judge found the PCRA court reasonably concluded Johnson had not shown his failure to testify prejudiced him:  because Johnson's testimony was not credible, there was no reasonable probability that, had he testified, he would have been acquitted or convicted of a lesser offense.

As to Johnson's related first claim—that counsel were ineffective for failing to file a motion in limine to exclude his juvenile adjudication—the Magistrate Judge concluded this claim

---

[9] A state court's adjudication of a claim is "contrary to . . . clearly established Federal law" for purposes of § 2254(d)(1) if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [the opposite result]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  For purposes of § 2254(d)(1)'s unreasonable application clause, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410).  A state court's application of federal law is not unreasonable "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Similarly, a state court's factual determination is not unreasonable for purposes of § 2254(d)(2) "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

was procedurally defaulted, citing the Superior Court's holding that Johnson had waived the claim by failing to raise it in his PCRA petition.[10] Although Johnson argued his PCRA counsel's ineffectiveness in failing to raise the motion in limine claim constituted cause for the default, citing *Martinez v. Ryan*, 132 S. Ct. 1309 (2012),[11] the Magistrate Judge rejected this argument,

---

[10] "Procedural default occurs when a claim has not been fairly presented to the state courts (i.e., is unexhausted) and there are no additional state remedies available to pursue; or, when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule." *Rolan v. Coleman*, 680 F.3d 311, 317 (3d Cir. 2012) (citations omitted). Where a claim has been procedurally defaulted, a federal court will not review it unless the petitioner "can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Norris v. Brooks*, 794 F.3d 401, 404 (3d Cir. 2015) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

[11] In *Martinez*, the Supreme Court recognized a narrow exception to the general rule that attorney error during state collateral proceedings does not constitute cause to excuse a procedural default of a claim later raised in a federal habeas petition. Under this exception, when a state requires prisoners to raise claims of ineffective assistance of trial counsel in collateral proceedings, such that collateral proceedings represent the first occasion to raise such claims, a federal habeas petitioner may establish cause for the default of an ineffective assistance of trial counsel claim by showing (1) counsel in an initial-review collateral proceeding was ineffective for failing to raise the ineffective assistance of trial counsel claim and (2) the claim counsel failed to raise "is a substantial one," meaning it "has some merit." *Martinez*, 132 S. Ct. at 1318; *see also Glenn v. Wynder*, 743 F.3d 402, 410 (3d Cir. 2014).

In its response to Johnson's habeas petition, the Commonwealth argues *Martinez* is inapplicable in this case because Johnson's PCRA petition was not his first opportunity to raise ineffective assistance of trial counsel claims, as, following his sentencing, he raised such claims in a counseled post-sentence motion. *See Martinez*, 132 S. Ct. at 1320 (holding the *Martinez* rule "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial"). The Court need not address this issue as even if Johnson's PCRA petition was the first opportunity for him to raise ineffective assistance of trial counsel claims, as the PCRA court suggested, *see Johnson*, 2013 WL 11274696, at *8 (observing "[p]etitioners generally should wait to raise ineffectiveness of counsel claims until collateral review"), his default cannot be excused under *Martinez* for the reasons discussed below.

9

finding the defaulted claim to be meritless because it is subject to the same prejudice analysis as his claim based on counsel's advice not to testify.[12]

Johnson objects to the Magistrate Judge's prejudice analysis on two grounds. First, he objects that the PCRA court's adverse credibility finding "is an unreasonable determination of the facts and clearly shows judicial bias," given the PCRA court's emphasis on the lack of evidence that Johnson saw the gun in the victim's possession in denying Johnson's motion for judgment of acquittal at trial. *See* Pet'r's Objections 3. Second, Johnson objects that the PCRA court applied the wrong standard in evaluating prejudice by considering whether Johnson's testimony was credible and persuasive enough to have affected the court's own verdict rather than whether there was a reasonable probability that the testimony would affect the decision of a new jury. *See id.* at 5-6. Both objections lack merit.[13]

Where, as here, an ineffective assistance of counsel claim is predicated on counsel's failure to call certain witnesses at trial, a court "may consider the credibility of witnesses in determining whether a petitioner has demonstrated prejudice." *See Tokley v. Ricci*, 541 F. App'x 168, 171-72 (3d Cir. 2013); *see also Cannon v. Trammell*, 796 F.3d 1256, 1274-75 (10th Cir. 2015) (affirming the district court's conclusion that the defendant was not prejudiced by his failure to testify because his evidentiary hearing testimony was not credible and was therefore unlikely to have changed the result at trial); *Brown v. Bickell*, No. 10-428, 2012 WL 2018020, at

---

[12] The Magistrate Judge found the miscarriage of justice exception inapplicable because Johnson failed to present any new, reliable evidence of innocence. Johnson does not dispute this finding.

[13] In addition to being meritless, Johnson's objection regarding the PCRA court's application of the wrong standard is waived, as he did not raise the issue before the Magistrate Judge. *See* Local R. Civ. P. 72.1(IV)(c) ("[U]nless the interest of justice requires it, new issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge.").

*9 (E.D. Pa. Mar. 27, 2012) (upholding PCRA court's credibility rulings as to alibi witnesses whom counsel failed to interview and call at trial), *report and recommendation adopted by Brown v. Lawler*, No. 10-428, 2012 WL 2130881 (E.D. Pa. June 4, 2012); *Moskovits*, 844 F. Supp. at 208-09 (considering the credibility of a defendant's evidentiary hearing testimony in assessing whether the absence of the testimony prejudiced his defense at trial).[14] Indeed, the Pennsylvania Supreme Court has held the prejudice analysis in such a case *must* include an assessment of witness credibility. *See Commonwealth v. Johnson*, 966 A.2d 523, 539-40 (Pa. 2009) (recognizing a court's finding that a defendant was prejudiced by trial counsel's failure to interview and call alibi witnesses "must necessarily include some measure of a finding that the witnesses were credible").[15]

While federal case law regarding the appropriate standard for evaluating credibility in the *Strickland* prejudice context is sparse, the Pennsylvania Supreme Court has recognized "assessing credibility for purposes of *Strickland* prejudice is not necessarily the same thing as

---

[14] In *Moskovits*, as in this case, the defendant argued his trial counsel had been ineffective for advising him not to testify based on the mistaken belief that if he testified, he could be impeached with a prior conviction. In evaluating whether the defendant was prejudiced by counsel's error, the court assumed the defendant was required to "demonstrate a 'reasonable probability' that his trial verdict would have been different had he testified," but noted it was arguable that his burden of proof as to prejudice should be "softened somewhat to account for the fact that the deficient representation [he] received interfered with his fundamental right to testify." 844 F. Supp. at 208 n.8. The Third Circuit has since confirmed that the *Strickland* standard "is applicable when a petitioner claims his attorney was ineffective by denying him his constitutional right to testify," and requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Palmer v. Hendricks*, 592 F.3d 386, 394 (3d Cir. 2010) (citations omitted).

[15] The Third Circuit has reached a similar conclusion regarding the district courts' role in evaluating a motion for a new trial based on newly discovered evidence, holding that in assessing whether the newly discovered evidence would probably produce an acquittal at a new trial, a district court must decide in the first instance whether the new evidence is credible. *United States v. Kelly*, 539 F.3d 172, 188-89 (3d Cir. 2008).

assessing credibility at a trial," as "credibility assessments in the *Strickland* context are not absolutes, but must be made with an eye to the governing standard of a 'reasonable probability' that the outcome of the trial would have been different." *Johnson*, 966 A.2d at 541. The Pennsylvania Supreme Court has thus held "the question for the PCRA court is not whether the jury in fact would have credited [the] new evidence," but "whether the nature and quality of the evidence is such that there is a reasonable probability that the jury would have credited it and rendered a more favorable verdict," an assessment that "must include a recognition of the impeachability of the witnesses, and not merely a viewing of their testimony in a most favorable light." *Id.* at 542. This standard is consistent with the standard that has been applied in this district. *See Moskovits*, 844 F. Supp. at 208 (evaluating whether jurors "reasonably could have believed" the defendant's exculpatory testimony in assessing whether a § 2255 movant was prejudiced by trial counsel's erroneous advice not to testify); *cf. Kelly*, 539 F.3d at 189 (holding the standard for making a credibility determination as part of the inquiry whether newly discovered evidence presented on a motion for a new trial would probably produce an acquittal is "whether a jury probably would reach a different result upon hearing the new evidence" (quoting *United States v. Grey Bear*, 116 F.3d 349, 350 (8th Cir. 1997))).

The record in this case does not support Johnson's claim that the PCRA court applied an incorrect standard in evaluating his credibility. After hearing from Johnson at the PCRA hearing, the PCRA court found his testimony was incredible for reasons the court articulated on the record and in its Rule 1925 opinion, including inconsistencies between Johnson's PCRA hearing testimony and Davis's testimony, and the lack of evidence that Johnson ever mentioned to anyone that he had seen the victim with a gun. *See Johnson*, 2013 WL 11274696, at *10. The PCRA court further found "no reasonable fact finder would believe [Johnson's] testimony when

taken in context" and there was thus no reasonable probability his testimony would have produced a different outcome. *Id.* These statements refute Johnson's claim that the PCRA court applied wrong standard in evaluating his credibility; hence, Johnson has not shown the state court's decision was an unreasonable application of *Strickland*.[16] Johnson's objection regarding the standard applied by the PCRA court will therefore be overruled.

Johnson also has not shown the PCRA court's credibility finding was an unreasonable determination of the facts.[17] In arguing to the contrary, Johnson relies primarily on the trial court's comments in denying his motion for a judgment of acquittal at trial, noting the court "repeatedly explained to defense counsel that there had yet to be any evidence to establish that [Johnson] had actually seen the gun in the [victim]'s possession," and made it clear to defense

---

[16] As the Third Circuit has observed in new trial context, the distinction between a court's own credibility finding and a finding about the likelihood a jury at a second trial would credit the testimony may well be "a distinction without a difference, in that 'if a district court does not believe a witness, it seems most unlikely that the same court would find the witness sufficiently persuasive to enable the court to say that the witness's testimony would probably produce an acquittal at a new trial.'" *Kelly*, 539 F.3d at 189 n.14 (quoting *Grey Bear*, 116 F.3d at 351)). The Third Circuit has thus held "a district court's statement that newly discovered evidence 'is not credible,' for example, is perfectly acceptable as long as the court sets forth its reasoning." *Id.*

[17] The Magistrate Judge concluded the PCRA court's credibility finding is a factual determination that must be presumed correct under 28 U.S.C. § 2254(e)(1) unless rebutted by clear and convincing evidence. *See* Report & Recommendation 12. Johnson maintains the credibility finding should be reviewed under § 2254(d)(2). Both positions find some support in the case law. *Compare Fowler v. Mooney*, No. 14-1768, 2015 WL 7007772, at *8 (E.D. Pa. Aug. 31, 2015) (holding a PCRA court's finding that an uncalled expert witness was not credible was entitled to a presumption of correctness), *report and recommendation adopted by* 2015 WL 6955434 (E.D. Pa. Nov. 9, 2015), *and Brown*, 2012 WL 2018020, at *9 (holding a PCRA court's credibility findings regarding uncalled alibi witnesses were not to be disturbed "unless clear and convincing evidence shows they are mistaken"), *with Gregg v. Rockview*, 596 F. App'x 72, 78 n.5 (3d Cir. 2015) (holding a PCRA court's finding that uncalled alibi witnesses' testimony was so incredible that its admission would not have created a reasonable probability of a different outcome at trial was "an unreasonable determination of the facts before the court under § 2254(d)(2)"). Because Johnson has not shown the PCRA court's credibility assessment was erroneous under either standard, this Court need not decide which standard applies.

13

counsel "that absent evidence that [Johnson] himself saw the gun his subsequent actions in shooting could not be excused as self-defense." Pet'r's Objections 3; *see also* Pet'r's Reply 22. Johnson argues it was unreasonable for the PCRA court "to require evidence that [Johnson] saw the gun, and then when that evidence is presented to discredit it." Pet'r's Objections 4. This Court disagrees.

The trial court clearly viewed the lack of evidence that Johnson saw the victim with a gun as significant; indeed, the court cited the absence of such evidence among the factors that left the court "free to believe that [Johnson] did not reasonably believe it was immediately necessary to kill." *Commonwealth v. Johnson*, No 2548 EDA 2007, slip op. at 10 (Pa. Super. Ct. Mar. 2, 2009) (citing trial court's January 29, 2008, opinion) (attached as Ex. A to Resp'ts' Response). But even if the lack of such evidence may have contributed to the trial court's rejection of Johnson's self-defense theory, it does not follow that the court would have been required to credit Johnson's account had he elected to testify at trial—or that the court was required to do so when Johnson did in fact testify at the PCRA hearing. Put differently, that credible evidence Johnson saw the gun before shooting could have swayed the verdict does not make Johnson's testimony to that effect credible. The PCRA court found "no reasonable fact finder would believe [Johnson's] testimony" after observing Johnson at the PCRA hearing and considering his account in light of the other evidence presented at trial. Because Johnson has not shown the PCRA court's resolution of this issue was an unreasonable determination of the facts in light of the evidence presented to the PCRA court, this objection will likewise be overruled.

As to Johnson's remaining claims—that counsel were ineffective (3) for failing to present photographs supportive of his claim of self-defense, (4) because one of the attorneys was impaired by over-the-counter cold medication during trial, and (5) for making multiple errors

14

that collectively denied him a fair trial—the Magistrate Judge concluded each of these claims was procedurally defaulted because Johnson failed to raise any of them in his PCRA appeal, and the claims were therefore waived. Report & Recommendation 7. The Magistrate Judge considered Johnson's argument that ineffective assistance of PCRA counsel supplied cause for the default pursuant to *Martinez v. Ryan*, but rejected the argument, concluding *Martinez* was inapplicable because the claims were defaulted on PCRA appeal, and not in an initial-review collateral proceeding (i.e., a proceeding which provides the first occasion to raise a claim of ineffective assistance at trial). *See id.* at 8. Johnson objects to the Magistrate Judge's rejection of his *Martinez* argument, asserting "[a] review of claims three, four and five show[s] that these claims *should have* been raised on Petitioner's initial post conviction relief act petition, and PCRA counsel was ineffective for not raising them at that stage." Pet'r's Objections 8.

Contrary to Johnson's assertion, PCRA counsel did raise the claim that trial counsel were ineffective for failing to present photographs and testimony from a defense investigator in his PCRA petition. *See* Resp'ts' Response 8. The PCRA court rejected the claim, *see id.* at 9, and Johnson did not pursue the issue on appeal.[18] The Magistrate Judge thus properly held *Martinez* was inapplicable to this claim. *See Norris*, 794 F.3d at 405 (holding the *Martinez* exception did

---

[18] Although Johnson's PCRA appellate counsel alluded to trial counsel's failure to present evidence regarding the reenactment of the incident in his statement of the issues on appeal, the issue is not discussed in the body of the brief. *Compare* Brief of Appellant, *Commonwealth v. Johnson*, No. 2780 EDA 2011, 2012 WL 7985482, at *1, *7 (Pa. Super. Ct. Aug. 21, 2012), (characterizing the second issue on appeal as whether the evidence adduced at the evidentiary hearings established a reasonable probability that "had [Johnson] testified at trial and had the evidence as to the recreation of the incident possessed by trial counsel been presented at trial the outcome would have been different"), *with id.* at *24 (arguing only that "had [Johnson] testified at trial the outcome would have been different").

not apply to an ineffective assistance of trial counsel claim "presented on initial collateral review and only waived on collateral appeal").[19]

Johnson's fourth and fifth claims, in contrast, were not included in his PCRA petition, and were therefore defaulted before the PCRA court. Nevertheless, this Court agrees Johnson's default of these claims is not excused under *Martinez* because the claims are insubstantial.

In his fourth claim, Johnson alleges he received ineffective assistance of counsel because one of his two trial attorneys was under the influence of over-the-counter cold medication during a portion of the trial, preventing the attorney from adequately participating in the decision whether Johnson should testify.[20] Because the attorney's impairment is alleged to have prejudiced Johnson's defense only by contributing to Johnson's failure to testify,[21] and because

---

[19] In his reply, Johnson characterizes his third claim as being "intertwined with" his motion in limine claim, suggesting the photographs could only have been introduced if he testified, and it was thus counsel's failure to investigate the admissibility of his prior juvenile adjudication and erroneous advice not to testify that "precluded the photo[]s from being introduced into evidence." Pet'r's Reply 40. Insofar as Johnson relies on the failure to introduce the reenactment photos as an additional aspect of the prejudice he suffered as a result of counsel's advice not to testify, *Martinez* remains inapplicable as the claim that trial counsel were ineffective for advising him not to testify lacks merit. *See Glenn*, 743 F.3d at 410-11 (holding a petitioner's procedural default of ineffective assistance of trial counsel claims were not excused under *Martinez* where the claims lacked merit). As set forth above, the photographs would have bolstered Johnson's testimony only by showing it would have been possible for him to see a gun in the victim's lap from his position in the driver's seat. *See* n.3, *supra*. Given the state courts' assessment of Johnson's credibility, it is not reasonably probable that this evidence would have resulted in a different outcome at trial.

[20] Although Johnson addressed the fact of counsel's impairment in connection with his claim that counsel were ineffective for advising him not to testify, he concedes he did not raise the issue as an independent ground for relief in his PCRA petition. *See* Pet'r's Reply 41. Indeed, had he done so, *Martinez* would be inapplicable because he did not pursue the issue in his PCRA appeal. *See Norris*, 794 F.3d at 405.

[21] As explained in Johnson's reply, his two trial attorneys disagreed as to whether he should testify, with the impaired attorney advocating in favor of testifying. *See* Pet'r's Reply 42-44. Johnson contends that absent the impaired attorney's illness and the effects of the cold medication, his views would have prevailed and Johnson would have testified. *See id.*

16

the state courts reasonably concluded Johnson's failure to testify did not prejudice him, the fourth claim lacks merit. Johnson's fifth claim relies on the doctrine of cumulative error. The errors identified, however, are primarily alleged to have impacted Johnson's decision whether to testify; therefore, this claim also lacks merit.

Finally, Johnson objects that the Magistrate Judge mischaracterized the facts by portraying him as "some sort of gun tot[]ing thug that just gunned down an innocent man," rather than as having shot the victim out of fear based on the victim's possession of "a loaded cocked gun." Pet'r's Objections 1-2. The Magistrate Judge drew her recitation of facts directly from the Superior Court's opinion affirming the PCRA court's denial of Johnson's PCRA petition, which, in turn, quoted the PCRA court's Rule 1925 opinion. Report & Recommendation 1-3. This objection is, in effect, a further challenge to the PCRA court's assessment of Johnson's credibility and is therefore not a valid ground for relief.

Because the Court agrees with the Magistrate Judge that Johnson's claims are either procedurally defaulted or meritless, Johnson's objections will be overruled, the Report and Recommendation will be adopted, and Johnson's habeas petition will be dismissed in part and denied in part without an evidentiary hearing. An appropriate order follows.

BY THE COURT:


   /s/ Juan R. Sánchez
Juan R. Sánchez, J.